**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| CASEY'S GENERAL STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | C.A. No. 4:10-cv-265 |
| v. | ) | |
| | ) | |
| ALIMENTATION COUCHE-TARD INC. and | ) | |
| ACT ACQUISITION SUB, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| ALIMENTATION COUCHE-TARD INC. and | ) | |
| ACT ACQUISITION SUB, INC., | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CASEY'S GENERAL STORES, INC., | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT J. MYERS, KENNETH HAYNIE, | ) | |
| WILLIAM C. KIMBALL, JOHNNY DANOS, | ) | |
| DIANE C. BRIDGEWATER, JEFFREY M. | ) | |
| LAMBERTI, RICHARD A. WILKEY and H. | ) | |
| LYNN HORAK, | ) | |
| | ) | |
| Additional Counterclaim | ) | |
| Defendants. | ) | |

**ALIMENTATION COUCHE-TARD INC.'S AND ACT ACQUISITION SUB, INC.'S
RESPONSE TO CASEY'S MOTION FOR EXPEDITED DISCOVERY AND AN
EXPEDITED SCHEDULE**

Defendants and Counterclaim Plaintiffs Alimentation Couche-Tard Inc. and ACT Acquisition Sub, Inc. (collectively, "Couche-Tard" unless otherwise noted), through their undersigned counsel, hereby respond to Plaintiff's and Counterclaim Defendant's Motion for Expedited Discovery and an Expedited Schedule, which was also the subject of the telephonic conference with the Court held on June 23, 2010 ("June 23 Court Call").   This response summarizes the position taken by counsel for Couche-Tard during that call.

## A.      Background

On April 9, 2010, after several unsuccessful attempts to engage in discussions with Casey's General Stores, Inc. ("Casey's") regarding a possible business combination, Couche-Tard publicly announced its intent to launch a non-discriminatory, non-coercive, all cash, premium tender offer to acquire all of the outstanding shares of Casey's common stock for $36 per share (the "Tender Offer" or the "Offer").   In response, Casey's board promptly began fortifying its defenses -- adopting a "poison pill" on April 16 and executing lucrative change of control agreements with Casey's top executives in late May and early June -- all the while refusing to engage in any dialogue with Couche-Tard.   Thus forced to take its proposal directly to Casey's shareholders, Couche-Tard commenced its Offer on June 2, 2010.

Casey's filed this lawsuit on June 11, 2010.   The gravamen of its complaint is that Couche-Tard violated §§ 10(b) and 14(e) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rules 10b-5 and 14e-8 promulgated thereunder by engaging in a "market manipulation scheme" purportedly in order "to acquire Casey's at an artificially deflated price."   Compl. ¶1; *see also id*. ¶¶74-98.   Specifically, Casey's contends that Couche-Tard violated the federal securities laws by selling a large percentage of its position in Casey's common stock on April 9, 2010 after publicly announcing the Tender Offer, thereby simultaneously (i) profiting through

the jump in the stock price attributable to the announcement and (ii) artificially depressing the stock price in order to make its Offer more likely to succeed. *See, e.g.*, Compl. ¶¶18-24.[1]

On June 18, 2010, Casey's filed both a motion for a preliminary injunction (the "Preliminary Injunction Motion") and a motion for expedited proceedings (the "Expedition Motion"). In its Preliminary Injunction Motion, Casey's seeks an order (i) enjoining Couche-Tard from taking any further steps to consummate the Offer, (ii) directing Couche-Tard to make additional disclosures in connection with the Offer regarding its trading activities in Casey's common stock, and (iii) enjoining Couche-Tard from engaging in allegedly manipulative acts. PI Br. at 4.[2] The Expedition Motion, in turn, (a) requests a hearing on Casey's Preliminary Injunction Motion during the week of August 23, 2010 -- prior to the annual meeting of Casey's shareholders, which counsel for Casey's advised the Court he anticipates will occur in September 2010 (the "Annual Meeting") -- and (b) sets forth proposed discovery and briefing deadlines with

---

[1]     As was explained during the June 23 Court Call, Casey's claim of market manipulation is completely meritless. Under the federal securities laws, a bidder has no duty to disclose its *purchases or sales of a target's stock that occur prior to the commencement of a tender offer*, as long as the bidder's accumulation of shares does not exceed 5% of the total outstanding. Couche-Tard's purchases of approximately 3.9% of Casey's stock did not meet this requirement. Nor did Couche-Tard's sales of April 9, 2010 have a manipulative (*i.e.*, artificial) effect on the stock price. These were real purchases and sales. Couche-Tard decided that morning to sell when, contrary to its expectations, the stock opened above $38 per share. Couche-Tard sold because it was a buyer at $36 per share and a seller at $38.50 per share. It is as simple as that. Nor did its sales have any artificially depressing effect on the stock price, which continued to rise after the sale to over $40 per share, on very heavy volume. Finally, there is no allegation by Casey's that Couche-Tard's sales two and a half months ago are continuing to have an "artificially depressing" effect on Casey's stock price, which is hovering around $36 per share. Significantly, although Casey's has had more than ample time to find a "white knight," no one has come forward with a topping bid, leaving one to conclude that Casey's claim that $36 per share is a "low-ball" offer is nothing more than unsubstantiated rhetoric.

[2]     Citations to "PI Br. at ___" refer to Plaintiff's Memorandum of Law In Support of Its Motion For a Preliminary Injunction, dated June 18, 2010.

a presumed late-August hearing date.  Exp. Br. at 3.[3]  This memorandum constitutes Couche-Tard's response to the Expedition Motion.[4]

    In short, while Couche-Tard agrees that some degree of expedited *discovery* is warranted in these circumstances, as long as it goes both ways, it submits that Casey's request for an expedited hearing on its Preliminary Injunction Motion is wholly premature and, for the reasons discussed below, should be denied at this juncture of the litigation.

## B.    Casey's Request For An Expedited Hearing On Its Preliminary Injunction Motion Is Premature

    The thrust of the Preliminary Injunction Motion is that Casey's -- and its shareholders -- will suffer irreparable injury if Couche-Tard is not restrained from proceeding with the Tender Offer.  *See, e.g.*, PI Br. at 28-29.  The imminent harm, Casey's argues, is that Couche-Tard could "clos[e] the [Offer] [before] there can be a full trial on the merits," at which point "it becomes difficult, and sometimes virtually impossible, for a court to 'unscramble the eggs.'"  *Id*. at 28 (quotations and citation omitted).  In sum, "Casey's and its shareholders will suffer irreparable harm if the tender offer is allowed to close before Casey's and the Court fully understand the

---

[3]    Citations to "Exp. Br. at ___" refer to Plaintiff's Memorandum of Law In Support of Its Motion For Expedited Discovery and Expedited Schedule, dated June 18, 2010.  In principal part, Casey's proposes that Couche-Tard complete document production and written discovery responses by July 9, 2010 and produce a 30(b)(6) witness for examination by July 23, 2010, and that the parties complete their briefing on the Preliminary Injunction Motion by August 13, 2010.  *Id*.  Casey's schedule does not account for the discovery Couche-Tard will seek on its counterclaims, or any motion practice beyond Casey's Preliminary Injunction Motion.

[4]    Also on June 18, Couche-Tard filed an Answer, Affirmative Defenses and Counterclaims against Casey's and its directors, alleging, among other things, that: (i) the directors have breached and continue to breach their fiduciary duties by adopting and failing to remove defensive devices designed to thwart the Tender Offer regardless of its benefits to Casey's shareholders; (ii) certain anti-takeover related provisions of the Iowa Business Corporation Act are unconstitutional and thus void; and (iii) the directors have violated § 14(e) of the Exchange Act by making untrue statements of material fact in Casey's Schedule 14D-9, filed on June 8, 2010, and omitting material facts necessary to make certain statements in the Schedule 14D-9 not misleading.

extent (and price impact) of Couche-Tard's scheme." *Id*. at 29.  Thus, Casey's contends that discovery, extensive briefing and a full evidentiary hearing on its Preliminary Injunction Motion should be crammed in between now and the Annual Meeting -- *i.e.*, within the next sixty days -- to stave off the damage that purportedly would befall Casey's and its shareholders were the Tender Offer to close in the interim.

The problem with this argument is that it is built on a false premise, for, as counsel for Couche-Tard explained during the June 23 Court Call, Couche-Tard's Tender Offer *can't* close in the interim.  As Casey's recognizes in its motion papers, Couche-Tard cannot, as a practical matter, proceed with the Tender Offer without the consent of the Casey's board in light of the poison pill and other anti-takeover provisions of the Iowa Business Corporation Act ("IBCA"). Unless Casey's board agrees to redeem the poison pill (or make it otherwise inapplicable to the Tender Offer), any attempt by Couche-Tard to consummate the Offer would result in ruinous and irreparable dilution.  Similarly, as articulated in detail in Couche-Tard's Answer, Affirmative Defenses and Counterclaims, the IBCA anti-takeover statutes (pursuant to which the poison pill is expressly authorized) empower Casey's board to completely block any takeover bid they do not approve (including the Tender Offer).[5]

In fact, the only way Couche-Tard can successfully consummate the Tender Offer in the face of board opposition is to replace Casey's directors at the Annual Meeting with new directors who are willing to let Couche-Tard's Offer go forward.  Until then, the Tender Offer is already *de facto* enjoined and Casey's Preliminary Injunction Motion presents no ripe issue for

---

[5]     Indeed, for that reason, the Tender Offer is conditioned on, among other things, the Casey's board redeeming the poison pill or otherwise making it inapplicable to the Tender Offer and exempting the second-step merger contemplated by the Tender Offer under IBCA § 490.1110 (the Business Combination Statute).

adjudication.  In other words, without knowing the outcome of the Annual Meeting shareholder vote, *it is impossible to determine whether there is anything even to enjoin*.

If Couche-Tard is unsuccessful in its effort to remove Casey's incumbent board at the Annual Meeting, that will in all likelihood moot Casey's need for preliminary injunctive relief, since Couche-Tard will remain effectively enjoined pending a full trial on the merits of both Casey's claims and Couche-Tard's counterclaims.  Only in the event that Couche-Tard succeeds in replacing the board at the Annual Meeting does the relief Casey's seeks -- to enjoin the Tender Offer -- arguably become relevant, in which case the Court can set an expedited briefing schedule and a prompt hearing on a preliminary injunction motion if Casey's new directors elect to proceed with this lawsuit (which is unlikely).  In short, the likelihood is that the shareholder vote at the Annual Meeting will decide the matter one way or the other, thereby obviating the need for any preliminary injunction hearing.[6]  Courts faced with similar facts have refused to entertain such speculative motions.

Just a few months ago, the Court of Chancery for the State of Delaware faced an analogous situation, and held that scheduling an expedited trial under these circumstances and cramming discovery into such a short time frame "would be wasteful of the Court's and the parties' resources."  *Air Prods. & Chems., Inc. v. Airgas, Inc*., C.A. Nos. 5249-CC, 5256-CC, 2010 WL 1057527, at *1 (Del. Ch. Mar. 17, 2010).  In *Airgas*, a shareholder plaintiff alleged that the board of directors of Airgas, Inc. ("Airgas") was breaching its fiduciary duties by refusing to

---

[6]     Nor does Casey's need a hearing before the Annual Meeting for the purpose of obtaining corrective disclosure with respect to an Offer that cannot proceed until after that meeting.  All of the underlying facts, as well as Casey's unsubstantiated allegations as to Couche-Tard's motive regarding its sales are already a matter of public record.  As with their claim of manipulation, there will be ample time following the Annual Meeting for the Court to address any remaining allegations of inadequate disclosure in Couche-Tard's Offer materials.

redeem Airgas' rights plan and by relying on other defensive measures. *Id*. at *1. The plaintiff filed a motion to expedite and sought a trial in ninety days -- prior to Airgas' annual meeting. *Id*. The Court held that the motion to expedite was "premature" and that "[a] trial in ninety days in these cases is not necessary given the fluid nature of the situation." *Id*. The Court reasoned that "[w]ith this process just beginning to unfold (Air Products initiated its tender offer just five weeks ago), it would be wasteful of the Court's and the parties' resources to require all discovery (including document, expert and deposition work) and trial preparation to be crammed into the next ninety days." *Id*. Critically, the Court scheduled the trial for *after* Airgas' annual meeting, reasoning that the meeting would serve as a "corporate plebiscite on Air Products' offer, as well as the Airgas board of directors' responses to that offer, including Airgas' poison pill and related defensive measures." *Id*.; *see also Louisiana Sheriffs' Pension & Relief Fund v. Crane*, C.A. No. 4193-VCL, 2009 WL 1099925, at *2 (Del. Ch. Apr. 14, 2009) (denying plaintiffs' motion for expedited proceedings where the potential harm alleged could be mooted depending on outcome of shareholder vote at annual meeting).

The same result should apply here. Counsel for Casey's advised the Court during the June 23 Court Call that he expected Casey's would be holding its Annual Meeting in mid-September. The outcome of Casey's Annual Meeting will likely serve as a referendum on Couche-Tard's Tender Offer and the Casey's board's response, including the board's use of a poison pill and other defensive measures. Casey's board is not staggered, and Couche-Tard has submitted a competing slate of directors for nomination at the Annual Meeting. Couche-Tard has also made clear its commitment to a proxy contest in which it will seek to elect a full slate of new directors. Accordingly, the shareholder vote might very well moot Casey's Preliminary Injunction Motion, as well as any motion for preliminary injunctive relief that Couche-Tard may

wish to present.[7]   Since Casey's purported need for a preliminary injunction enjoining the Tender Offer is based on certain events (including the election of a competing slate of directors) that may never occur, it is purely speculative and premature.   *See U.S. Surgical Corp. v. Circon Corp.*, 1997 WL 33175025, at *2 (Del. Ch. Sept. 17, 1997) (declining to order expedited proceedings because plaintiff's claims were "based on an assumed set of facts" that "include[d] speculation regarding the voting behavior of the stockholders at the [next] annual meeting, as well as speculation regarding the ultimate decision by [the] board after the annual meeting in the event [an incumbent director] loses his seat on the board").

Finally, there is no risk that setting a hearing date after the Annual Meeting will provide Couche-Tard with an opportunity to purchase any more Casey's shares.   Under the Williams Act, once Couche-Tard commenced its Tender Offer, it was precluded from engaging in any purchases of Casey's stock other than through that Offer.   17 C.F.R. § 240.14e-5(a)).

The ballot box, not an expedited preliminary injunction hearing, remains the proper determinant of whether the Tender Offer proceeds.   "If the stockholders are displeased with the action of their elected representatives, the powers of corporate democracy are at their disposal to turn the board out."   *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 959 (Del. 1985).

## C.    Expedited Discovery

While Casey's request for a hearing on its Preliminary Injunction Motion is premature, Couche-Tard nevertheless agrees that limited expedited discovery is prudent, given the importance of the Annual Meeting.   In that regard, we are prepared to negotiate a mutually

---

[7]      Preliminary injunctive relief after the Annual Meeting to prevent Casey's from blocking Couche-Tard's premium Offer may become necessary if Casey's board declines to redeem the poison pill and remove the other obstacles existing under Iowa's unconstitutional statutory scheme that are described in Couche-Tard's counterclaims.

agreeable expedited discovery schedule addressing all issues raised in Casey's complaint and Couche-Tard's counterclaims and do not anticipate a problem reaching agreement on a reasonable schedule that will result in the completion of discovery before Casey's Annual Meeting in mid-September.

NYEMASTER, GOODE, WEST, HANSELL & O'BRIEN, P.C.

Dated: June 24, 2010

By: *//s// Jay Eaton*_____
Jay Eaton, Iowa Bar No. 2172
Thomas H. Walton, Iowa Bar No. 3808
Nyemaster, Goode, West, Hansell & O'Brien, P.C.
700 Walnut, Suite 1600
Des Moines, IA 50309-3899
Telephone: (515) 283-3158; Fax: (515) 283-8045
E-mail: je@nyemaster.com; thw@nyemaster.com
**ATTORNEYS FOR COUNTERCLAIM PLAINTIFFS**

OF COUNSEL:

DEWEY & LEBOEUF LLP
Robert C. Myers
Richard W. Reinthaler
Matthew L. DiRisio
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8056

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true copy of the foregoing instrument was served electronically by the U.S. District Court Clerk or by U.S. Mail by the undersigned upon all parties to the above-cause as disclosed herein on the 24th day of June 2010.

By: *//s// Jay Eaton*_____
Jay Eaton, Iowa Bar No. 2172