**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| CASEY'S GENERAL STORES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 4:10-cv-265 |
| | ) | ECF CASE |
| ALIMENTATION COUCHE-TARD INC. and | ) | |
| ACT ACQUISITION SUB, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| ALIMENTATION COUCHE-TARD INC. and | ) | |
| ACT ACQUISITION SUB, INC., | ) | |
| | ) | |
| Counterclaim Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| CASEY'S GENERAL STORES, INC., | ) | |
| | ) | |
| Counterclaim Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT J. MYERS, KENNETH HAYNIE, | ) | |
| WILLIAM C. KIMBALL, JOHNNY DANOS, | ) | |
| DIANE C. BRIDGEWATER, JEFFREY M. | ) | |
| LAMBERTI, RICHARD A. WILKEY and H. | ) | |
| LYNN HORAK, | ) | |
| | ) | |
| Additional Counterclaim | ) | |
| Defendants. | ) | |
| | ) | |

**ALIMENTATION COUCHE-TARD INC.'S AND ACT ACQUISITION**
**SUB, INC.'S REPLY MEMORANDUM OF LAW IN SUPPORT**
**OF THEIR MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT........................................................................................................4

    I.    CASEY'S HAS FAILED TO STATE A CLAIM FOR VIOLATION OF
         SECTION 14(e) ....................................................................................4

    II.   CASEY'S HAS FAILED TO STATE A CLAIM UNDER RULE 14e-8.......................9

    III.  CASEY'S HAS FAILED TO STATE A CLAIM FOR VIOLATION OF
         SECTION 10(b) AND RULE 10b-5.........................................................12

CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**CASES**                                                              **Page**

*Billard v. Rockwell Int'l Corp.,*
   526 F. Supp. 218 (S.D.N.Y. 1981) .........................................................7

*Billard v. Rockwell Int'l Corp.,*
   683 F.2d 51 (2d Cir. 1982)...........................................................6, 14

*Feldbaum v. Avon Prods., Inc.,*
   741 F.2d 234 (8th Cir. 1984) ....................................................6, 8

*Gas Natural v. E.On AG,*
   468 F. Supp. 2d 595 (S.D.N.Y. 2006)......................................10

*Greater Iowa Corp. v. McLendon,*
   378 F.2d 783 (8th Cir. 1967) .....................................................13

*Harrington v. Wilber,*
   670 F. Supp.2d 958 (S.D. Iowa 2009) .....................................13

*Hartmarx Corp. v. Abboud,*
   326 F.3d 862 (7th Cir. 2003) ...................................................10

*In re Citigroup, Inc. Sec. Litig.,*
   330 F. Supp. 2d 367 (S.D.N.Y. 2004)........................................7

*In re Donna Karan Int'l Inc. Sec. Litig.,*
   No. 97-CV-2011, 1998 WL 637547 (E.D.N.Y. Aug. 14, 1998)........................7

*In re Hartmarx Sec. Litig.,*
   No. 01 C 7832, 2002 WL 653892 (N.D. Ill. Apr. 19, 2002).............................11, 12

*In re Pfizer, Inc. S'holder Derivative Litig.,*
   __ F. Supp.2d __, 2010 WL 2747447 (S.D.N.Y. 2010) .........................7

*Kushner v. Beverly Enters., Inc.,*
   317 F.3d 820 (8th Cir. 2003) ...................................................7

*Miller v. Tony and Susan Alamo Found.,*
   924 F.2d 143 (8th Cir. 1991) ...................................................9

*M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*
   512 F.3d 455 (8th Cir. 2008) ...................................................13

*Nooner v. Norris,*
   594 F.3d 592 (8th Cir. 2010) ...................................................9

*Parnes v. Gateway 2000, Inc.*,
   122 F.3d 539 (8th Cir. 1997) ...........................................................................8

*Sanders v. Thrall Car Mfg. Co.*,
   582 F. Supp. 945 (S.D.N.Y. 1983) ..............................................................6, 7

*SEC v. Roxford*,
   Litig. Release No. 20487, 92 SEC Docket 2587, 2008 WL 648533 (Mar. 11, 2008) ............11

*SEC v. Thomas*,
   Litig. Release No. 18957, 84 SEC Docket 263, 2004 WL 2480713 (Nov. 3, 2004)...............11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)...........................................................................8

*Toks Inc.*,
   SEC Release No. 198, 2002 WL 21693 (Jan. 8, 2002)...............................................12

*USG Corp. v. Wagner & Brown*,
   689 F. Supp. 1483 (N.D. Ill. 1988) ...............................................................13

## STATUTES

Private Securities Litigation Reform Act of 1995 ("PSLRA"),
   15 U.S.C. §78u-4(b)...........................................................................2, 8, 9

Securities Exchange Act of 1934 §10(b) (15 U.S.C. §78j(b)) ......................................9, 12, 13, 14

Securities Exchange Act of 1934 §14(d) (15 U.S.C. §78n(d)) .........................................5

Securities Exchange Act of 1934 §14(e) (15 U.S.C. §78n(e))..............................................*passim*

## RULES

SEC Rule 10b-5 (17 C.F.R. §240.10b-5)........................................................9, 12, 13, 14

SEC Rule 13d............................................................................................1

SEC Rule 14e-3(a) (17 C.F.R. §240.14e-3(a)) ...............................................................4, 5

SEC Rule 14e-8 (17 C.F.R. §240.14e-8) .................................................................9, 10, 11, 12

## OTHER AUTHORITIES

Regulation of Takeovers and Security Holder Communications, Exchange Act Release
   No. 34-40633, 1998 WL 767321 (Nov. 3, 1998)...................................................11

Regulation of Takeovers and Security Holder Communications, Exchange Act Release
    No. 34-42055, 1999 WL 969596 (Oct. 22, 1999) ("Final Release")......................................10

SEC Obtains Judgments, SEC News Dig. 2008-48-6, 2008 WL 643068 ....................................11

Defendants and Counterclaim Plaintiffs Alimentation Couche-Tard Inc. and ACT Acquisition Sub, Inc. (collectively, "Couche-Tard" unless otherwise noted), through their undersigned counsel, respectfully submit this Reply Memorandum of Law in Support of Their Motion for Judgment on the Pleadings.

## PRELIMINARY STATEMENT

In its moving brief, Couche-Tard demonstrated that Casey's "manipulation" theory is facially implausible, unsupported by any particularized factual allegations and suffers from numerous other procedural deficiencies, including mootness and lack of standing. Accordingly, as Couche-Tard explained, Casey's Complaint fails to state any claim upon which relief could be granted, entitling Couche-Tard to judgment on the pleadings. Casey's Opposition does nothing to cure these deficiencies.

The question remains: what are the manipulation claims here? The press release that Couche-Tard issued on April 9 was not "manipulative" -- it truthfully announced an intention to launch a $36 per share tender offer, which Couche-Tard has done. That the stock price rose as a result of such announcement cannot be manipulative -- that happens every time a tender offer is announced at a premium price. Apparently recognizing this, Casey's argues that Couche-Tard's April 9 press release was "manipulative" to the extent it failed to disclose Couche-Tard's intention to sell most of its Casey's stock immediately thereafter. But Couche-Tard had no legal duty to disclose such an intention even if it had formed one (which it had not). The securities laws do not require a bidder to disclose its purchases or sales (as long as it remains below the Rule 13D and Hart-Scott-Rodino thresholds) until it commences its tender offer and files its Schedule TO with the SEC. Couche-Tard complied fully with the law by disclosing its sales in its Offer to Purchase on June 2. Nor has Casey's pointed to a single statement in the April 9

press release (as it is required to do under the Private Securities Litigation Reform Act of 1995

("PSLRA")) that was rendered false or misleading by the failure to disclose an intent that

Couche-Tard had not yet formed to sell shares under circumstances that had not yet occurred

(and which Couche-Tard did not expect would occur). Casey's failure (and inability) to do so is

fatal.

Casey's disclosure claim makes no sense. How could Couche-Tard have disclosed an

intention to sell when the market opened without knowing the price at which the stock would

trade? Did Casey's expect Couche-Tard to announce an intention to sell *if* the stock price

opened above $36, or $38, or some other number? Was Couche-Tard required to publicly

speculate as to what might happen to Casey's stock price that day? Of course, had Couche-

Tard made a hypothetical disclosure of the possibility that it might sell if the price rose above

$38 (which it had not yet decided to do), it would likely be here today facing an entirely different

manipulation claim, namely that it attempted to manipulate the price of Casey's shares upward

(or downward) by signaling the price at which it would be a seller. Had it made such an

announcement, the market could have misinterpreted Couche-Tard's intentions to consummate

its offer, resulting in a lower trading price that day. Surely Casey's would be howling if that

occurred. Casey's has failed to cite a single case in which a bidder has disclosed, been forced to

disclose or has been found liable for failing to disclose the price above which it would not pay to

acquire a target's shares. Yet that is essentially what Casey's claims Couche-Tard should have

disclosed here.

Casey's real complaint appears to be not that the April 9 press release was itself

"manipulative" or materially false or misleading, but rather that Couche-Tard's sales later that

morning artificially depressed the stock price of Casey's. But what is "artificial" about selling

stock in the open market?  These were not "wash sales" (the improper buying and selling of the same stock within a short period of time).  Casey's premise -- that Couche-Tard sold shares in order to depress the stock price, *i.e.*, to prevent the price from rising that day to its alleged "true value" of more than $40 per share -- is wrong, both as a theory and as a matter of fact.  What rational person would sell 2 million shares with an intention to do anything other than maximize its gain?

Moreover, there is nothing that Casey's has alleged or to which it can point in support of its claim.  On the contrary, the trading information of which this Court can take judicial notice makes clear that Couche-Tard's sales accounted for only a small percentage of the total volume of 15.5 million shares that were traded that day -- a day in which the stock opened high and continued to rise ***both during and after Couche-Tard's sales***.  There are no facts alleged in the Complaint to support the claim that Couche-Tard's sales even had a temporary (let alone permanent) depressing effect on Casey's stock price.  Casey's price did not climb above $40 that day for one simple reason -- investors did not think Casey's stock had an intrinsic value that high or that Couche-Tard (or anyone else) was likely to pay that much to acquire Casey's.  In any event, even if, contrary to the actual intra-day trading activity on April 9, Couche-Tard's sales had caused even a slight, temporary depressing effect on Casey's stock price, there would have been nothing artificial or manipulative about such an effect.  Rather, it would have been the result of the normal forces of supply and demand.  Couche-Tard's sales were no different than the remaining 13.5 million shares sold that day.  Stock prices rise and fall every day, hour and minute as transactions occur in the market at breathtaking speed -- there is nothing inherently wrong, unlawful, deceptive or manipulative about purchases and sales of stock (even in large blocks or quantities) that cause prices to rise or fall.  That is what the market is all about.

Couche-Tard's sale of Casey's shares was consistent with rational, value-maximizing behavior. Casey's stock opened on April 9 at more than $38 per share, more than $2 higher than Couche-Tard's $36 per share offer. Couche-Tard had previously acquired close to 2 million shares in the open market at a weighted average price of $31.36 per share. The purpose in doing so was to reduce the average cost that Couche-Tard would have to pay in order to acquire 100 percent of Casey's common stock. This is a common practice for would-be acquirers. Couche-Tard did not know on April 9 whether, given Casey's stubborn resistance to Couche-Tard's entreaties and scorched-earth defensive tactics, it would ultimately be successful at $36 per share (or some higher price). By "locking in" a $14 million pre-tax gain on its sales of Casey's shares, Couche-Tard was able to generate funds to cover some or all of its transaction costs in attempting to acquire Casey's should its efforts fail and Casey's were to remain an independent company. Although Couche-Tard's decision on the morning of April 9 may -- out of context -- appear unusual, it was perfectly legal and represented nothing more than a rational business decision by senior management on the morning of April 9 that Couche-Tard was a buyer at $36 and a seller at $38.43 per share.

## ARGUMENT

## I.   CASEY'S HAS FAILED TO STATE A CLAIM
##     FOR VIOLATION OF SECTION 14(e)

As demonstrated in Couche-Tard's moving brief, there is nothing in the federal securities laws that required Couche-Tard to disclose either its purchases or sales of Casey's stock prior to the commencement of its tender offer on June 2, 2010. Section 14(e) (15 U.S.C. §78n(e)) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 14e-3(a) (17 C.F.R. §240.14e-3(a)) promulgated thereunder *expressly permit* an offering person (such as Couche-Tard) to purchase *and sell* shares of a target prior to the commencement of a tender offer. *See* Couche-

Tard Mem. at 30-31. Couche-Tard further noted that Section 14(d) (15 U.S.C. §78n(d)) of the Exchange Act did not require disclosure of such purchases and sales until the filing of its Schedule TO on June 2. Couche-Tard Mem. at 31. Casey's has pointed to no case, SEC rule or regulation to the contrary in its Opposition. It simply ignores Section 14(d) and Rule 14e-3(a) -- as well as the only commentary and case law that are directly on point -- in urging this Court to rewrite the securities laws. This Court should decline Casey's invitation.

The material information that Casey's alleges was omitted from the April 9 Announcement -- namely, Couche-Tard's sale of Casey's stock -- was disclosed, as required by Section 14(d), in Couche-Tard's Schedule TO which was filed on June 2, the day Couche-Tard's Offer commenced. *See* Couche-Tard Mem. at 13. Recognizing this, Casey's now complains that such disclosure was materially misleading because Couche-Tard's Schedule TO initially disclosed that Couche-Tard had sold its Casey's holdings "in **an** open market sale" "at **a** price of $38.43 per Share." Casey's Mem. at 12. It should come as no surprise that research has failed to uncover a single reported decision under Section 14(e) (nor has Casey's cited one) holding that the use of the articles "a" and "an" in a tender offer filing made the disclosures therein "materially misleading." The salient facts were disclosed -- the number of shares sold and the average price per share realized. That is all the law requires.[1] Casey's shareholders have all the information they need, and plenty of time to make up their minds whether to accept Couche-Tard's offer, which cannot proceed unless and until Casey's board removes the barriers they

---

[1] Although not required to do so, in an abundance of caution and in order to put this issue to rest, once and for all, on August 2, Couche-Tard amended its Schedule TO to disclose that its sales occurred "in a series of open market sales" on April 9 "at a weighted average price of $38.43 per Share." Couche-Tard, Amendment No. 9 to Schedule TO (Schedule TO/A), at 4 (Aug. 2, 2010). Casey's nevertheless claims that the amended disclosure is still inadequate, because Couche-Tard has not disclosed its internal thought process before reaching its decision or that its purpose in doing so was to manipulate Casey's stock price. Casey's Mem. at 12-13. The law, however, does not require a bidder to disclose its internal thought processes or bidding strategy or to accuse itself of wrongdoing. *See* pp. 6-7, *infra*.

have erected to block Couche-Tard's offer or are voted out of office at Casey's annual meeting on September 23, 2010.

Under these circumstances no relief is available under Section 14(e). *See* Couche-Tard Mem. at 27-29; *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 54-55 (2d Cir. 1982) (affirming dismissal of Section 14(e) claims based on alleged omissions in connection with bidder's announcement of tender offer because "[b]y . . . the earliest time at which [the target's] common stock could be permissibly tendered, all available financial information had been fully disclosed"); *Sanders v. Thrall Car Mfg. Co.*, 582 F. Supp. 945, 964-69 (S.D.N.Y. 1983) (dismissing Section 14(e) claim where "plaintiff's allegations of nondisclosure relate to the period prior to defendants' tender offer, and these allegedly deceptive omissions were fully disclosed at the time the offer was made;" thus, "at the time [the target's] shareholders were 'faced with the decision whether to tender,' the crucial period for §14(e) purposes, there was no longer a misrepresentation upon which they could rely, an essential element of a §14(e) cause of action") (citations omitted); *Feldbaum v. Avon Prods., Inc.*, 741 F.2d 234, 237 (8th Cir. 1984) ("The federal purpose is served once material facts are revealed so that the shareholder has enough information to make an intelligent decision.") (citation omitted).[2]

Nevertheless, Casey's contends that Couche-Tard still has not made full "corrective disclosure" concerning its sales of Casey's stock because it has "<u>never</u> disclosed" (a) "its illegal behavior," *i.e.*, that it "implemented a market manipulation scheme to reap illicit profits and artificially depress the price of Casey's share" (Casey's Mem. at 13-14), and/or (b) "that it discussed, prior to April 9, selling its Casey's shares if they reached a certain price level after the

---

[2] Casey's suggestion that the question of whether a defendant has made adequate "corrective disclosure" is always an issue of fact for trial (Casey's Mem. at 11) is directly refuted by the cases cited above.

Announcement" (*id.* at 12). The law is clear beyond cavil that neither category of "information"

is required to be disclosed.

It is well-settled that the "federal securities laws do not require a company to accuse itself

of wrongdoing," *see* Couche-Tard Mem. at 20-22; *In re Pfizer Inc. S'holder Derivative Litig.*, __

F. Supp. 2d __, 2010 WL 2747447, at *10 (S.D.N.Y. 2010) (quoting *In re Citigroup, Inc. Sec.

Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004)), or "to direct conclusory accusations at itself."

*In re Donna Karan Int'l Inc. Sec. Litig.*, No. 97-CV-2011 (CBA), 1998 WL 637547, at *10 n.9

(E.D.N.Y. Aug. 14, 1998) (quotations omitted).[3] Nor was Couche-Tard under any obligation to

disclose "discussions" concerning the circumstances under which it might sell Casey's stock

when the market opened on April 9, as doing so would have required Couche-Tard to publicly

speculate about what might happen to Casey's stock price that day. *See Kushner v. Beverly

Enters., Inc.*, 317 F.3d 820, (8th Cir. 2003) ("Before liability for non-disclosure can attach, the

defendant must have violated an affirmative duty of disclosure . . . . There is no duty to disclose

'soft information,' such as a matter of opinion, predictions, or a belief as to the legality of the

company's own actions.  Soft information must be disclosed only if virtually as certain as hard

facts.") (citations omitted); *Billard v. Rockwell Int'l Corp.*, 526 F. Supp. 218, 221 (S.D.N.Y.

1981) ("the securities laws do not require traders to disclose the consequences of their actions

[which would be], like most future events, matters of prediction or speculation").  Indeed, had

Couche-Tard made such a hypothetical disclosure of the possibility that it might sell Casey's

stock if the price rose above a certain level, it would have undoubtedly faced an entirely different

---

[3] *See also Sanders*, 582 F. Supp. at 965 ("Thrall was under no obligation, as plaintiff appears to suggest, to characterize its pre-offer activities as a 'conspiracy . . . to force out the minority shareholders.'").

manipulation claim, namely that Couche-Tard attempted to manipulate the price of Casey's shares upward (or downward) by signaling the price at which it would be a seller.

In any event, given that Couche-Tard's *actual* sales of Casey's stock on April 9 were disclosed, as required by law, when Couche-Tard's tender offer commenced on June 2, it is unclear how providing shareholders with additional speculation now -- about what *hypothetically might have happened* to Casey's stock price had Couche-Tard acted differently on April 9 -- would be helpful or material to them in deciding whether to tender their shares. *See Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 546 (8th Cir. 1997) (an omission is material if it "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available") (quotation omitted); *Feldbaum*, 741 F.2d at 237 ("The federal purpose is served once material facts are revealed so that the shareholder has enough information to make an intelligent decision.") (citation omitted).   The law requires disclosure of *facts*, not speculation.

Moreover, even assuming that Casey's had alleged an actionable omission (and it has not), its Section 14(e) claim would still fail because Casey's has failed to plead, as required by the PSLRA (15 U.S.C. §78u-4(b)), particularized facts creating a "strong inference" of scienter that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *id.* at 324 (to allege a "strong inference of scienter," plaintiff must plead particularized facts creating an inference of deceptive or manipulative intent that is "more than merely 'reasonable' or 'permissible,'" but rather "cogent and compelling . . . in light of other explanations"). Here, Casey's allegations of scienter are wholly conclusory, "supported" by nothing beyond selected press reports and self-

serving analyst reports (which must be disregarded on the instant motion)[4] and come nowhere close to creating an inference of scienter that is as compelling as the opposing inference, namely, that Couche-Tard had no fraudulent intent, but rather acted as a rational, value-maximizing, potential acquirer in both (i) purchasing its initial stake in Casey's in order to lower the overall price to acquire 100 percent control and (ii) selling most of its Casey's shares on April 9 at a price well-above the $36 per share offer price (and above the price Couche-Tard was then willing to pay), in order to lock-in a $14 million gain that could be used to cover some or all of its transaction costs should Casey's succeed in its efforts to thwart Couche-Tard at any cost. *See* Couche-Tard Mem. at 29-32. Couche-Tard's decision on the morning of April 9 to sell was not illegal or irrational. In short, the inference of non-fraudulent intent is far more compelling than the inference that Casey's asks this Court to draw.

## II.   CASEY'S HAS FAILED TO STATE A CLAIM UNDER RULE 14e-8

As demonstrated in Couche-Tard's moving brief, Casey's does not (and cannot) state an independent claim for relief under Rule 14e-8 (17 C.F.R. §240.14e-8). Couche-Tard Mem. at 27-29, 32-36. As an initial matter, although characterized as a "manipulative disclosure" claim (Casey's Mem. at 9) (apparently a hybrid between a market manipulation claim under Section 10(b) (15 U.S.C. §78j(b)) and Rule 10b-5 (17 C.F.R. §240.10b-5), on the one hand, and a disclosure claim under Section 14(e), on the other), Rule 14e-8 does not provide a cause of action separate and apart from Section 14(e). Thus, the pleading deficiencies underlying Casey's Section 14(e) claim, discussed above -- namely, the failure to adequately allege an actionable omission or scienter (or manipulative intent, for that matter) with the specificity required by the

---

[4] *See Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) (press reports and articles are "rank hearsay" and are not to be accepted for the truth of the matters asserted therein) (quoting *Miller v. Tony & Susan Alamo Found.*, 924 F.2d 143, 147 (8th Cir. 1991)).

PSLRA -- equally doom its Rule 14e-8 claim. Moreover, even if a Rule 14e-8 claim could stand on its own (which it cannot), Casey's has pled no facts even suggesting that Couche-Tard's Tender Offer was illusory -- a necessary element of such a claim. Nothing in Casey's Opposition alters either conclusion.

*First*, Casey's does not dispute in its Opposition that its Rule 14e-8 claim (however characterized) rises and falls with its Section 14(e) claim. Casey's Mem. at 18-21. Indeed, it fails even to address the relationship between Section 14(e) and Rule 14e-8, much less justify its (indefensible) position that Rule 14e-8 somehow provides a cause of action for "manipulative disclosure" separate and apart from the statute authorizing its adoption. Nor could it. Rule 14e-8 was promulgated by the SEC to ensure that pre-commencement communications by a prospective bidder would be subject "to the antifraud provisions of . . . Section 14(e)." *See* Regulation of Takeovers and Security Holder Communications, Exchange Act Release No. 34-42055, 1999 WL 969596, at *46 (Oct. 22, 1999) ("Final Release"). In that regard, the rule did nothing more than implement Section 14(e) in the pre-commencement setting; it did not provide any substantive right *on top of* that statute. *See Gas Natural v. E.On AG*, 468 F. Supp. 2d 595, 608-09 (S.D.N.Y. 2006); *Hartmarx Corp. v. Abboud*, 326 F.3d 862, 868 (7th Cir. 2003). To our knowledge, no one other than Casey's counsel has ever asserted such an interpretation of Rule 14e-8, and when it did so, it did so unsuccessfully, which may explain why Casey's did not see fit to cite such contrary authority in its brief. *See Gas Natural*, 468 F. Supp. 2d at 613 (finding the argument that Rule 14e-8 provides a cause of action distinct from Section 14(e) a "position" that is "difficult to comprehend"). Accordingly, Casey's cannot overcome its pleading deficiencies by re-casting its defunct Section 14(e) claim as a separate and independent "Rule 14e-8 claim." Both are equally futile.

*Second*, Casey's likewise does not contest that Couche-Tard's Offer, as of the April 9 announcement, was genuine.  Instead, Casey's contends that subsection (b) of Rule 14e-8 -- which makes it a violation of Section 14(e) to announce a tender offer for the purpose of "manipulat[ing] the market price of the stock of the . . . subject company" (Casey's Mem. at 19) (quoting §240.14e-8(b)) -- applies even where the announcing bidder fully intends to consummate the tender offer *on precisely the terms disclosed in its announcement. Id.*  Thus, Casey's asserts, it is not required to show that Couche-Tard's Tender Offer was illusory in order to state a claim under Rule 14e-8. *Id.*  This interpretation of Rule 14e-8 (for which Casey's provides no authority) should be disregarded because it directly contradicts those issued by the SEC (which adopted the Rule) and the ruling of the only court to have addressed the issue (*In re Hartmarx Sec. Litig.*, discussed below).

The SEC left no doubt about the function of Rule 14e-8: to prevent market participants from manipulating stock prices by making phony tender offers.  Indeed, the SEC stated in its own issuing materials that its purpose in adopting the rule was to guard against the possibility that market participants would "announce a tender offer without the intention of beginning and completing it with the intention of manipulating the market price of the bidder or target." Regulation of Takeovers and Security Holder Communications, Exchange Act Release No. 34-40633, 1998 WL 767321, at *57 (Nov. 3, 1998); *see also* SEC Obtains Judgments, SEC News Dig. 2008-48-6, 2008 WL 643068, at *1 ("They made these fake offers in order to manipulate the price of the target companies' stock by inducing investors to purchase the stock."). Consistent with that purpose, an illusory tender offer has been a key component of every published action prosecuted by the SEC under the rule. *See, e.g., SEC v. Roxford*, Litig. Release No. 20487, 92 SEC Docket 2587, 2008 WL 648533 (Mar. 11, 2008); *SEC v. Thomas*, Litig.

11

Release No. 18957, 84 SEC Docket 263, 2004 WL 2480713 (Nov. 3, 2004); *Toks Inc.*, SEC Release No. 198, 2002 WL 21693 (Jan. 8, 2002). If that was not enough, the only federal court to have spoken on the issue came to the same conclusion. *See In re Hartmarx Sec. Litig.*, No. 01 C 7832, 2002 WL 653892, at *4 (N.D. Ill. Apr. 19, 2002) (establishing a violation of Rule 14e-8 "requires an intention not to pursue a proposed tender offer").

Casey's provides no principled basis for this Court to depart from the reasoning of the SEC and the only federal court to have squarely addressed the issue, nor does it provide even one example of a court -- or any other governmental body -- interpreting Rule 14e-8 in the manner it suggests. Instead, Casey's relies on "canons of statutory interpretation" to argue that, because Rule 14e-8 is written disjunctively, the Court should ascribe "independent meaning" to its separate clauses. Casey's Mem. at 19-20. Yet, in the same paragraph of its Opposition, Casey's acknowledges that this "canon" applies *unless the context of the statute requires otherwise.*" *Id.* (emphasis added). As demonstrated above, the SEC and federal courts have provided more than enough "context" to make clear that a violation of Rule 14e-8 necessarily requires a pretextual tender offer, announced for the sole purpose of manipulating the stock market. Casey's has failed to plead any such facts and its claim must be dismissed.

## III.   CASEY'S HAS FAILED TO STATE A CLAIM FOR VIOLATION OF SECTION 10(b) AND RULE 10b-5

Finally, as explained in Couche-Tard's moving brief, Casey's attempt to plead a claim under Section 10(b) and Rule 10b-5 fails because (i) Casey's lacks standing to assert this claim since it was neither a purchaser nor a seller of its own securities on April 9 (or between April 9 and June 2); and (ii) its theory of "manipulation" is conjectural, implausible and unsupported by particularized allegations of fact giving rise to a strong inference of scienter. *See* Couche-Tard Mem. at 37-38. Casey's attempts to answer these arguments are unavailing.

First, while conceding that, under controlling Eighth Circuit precedent, "a plaintiff must have purchased the fraudulently sold shares to have standing under Section 10(b) and Rule 10b-5" to assert a claim seeking damages *or injunctive relief* (Casey's Mem. at 21) (citing *Greater Iowa Corp. v. McLendon*, 378 F.2d 783 (8th Cir. 1967)), Casey's urges this Court to reject this holding and instead to "follow the logic and holdings of [a distinct *minority* of] other courts" that have reached a different result where the only relief sought was an injunction. Casey's Mem. at 22-23. But this Court is not free to ignore or overrule controlling Eighth Circuit authority. As Judge Pratt recently explained: "This Court is obligated to abide by the decisions of the Eighth Circuit Court of Appeals, because such decisions are 'controlling until overruled by [the Eighth Circuit] en banc, by the Supreme Court, or by Congress.'" *Harrington v. Wilber*, 670 F. Supp. 2d 958, 967 (S.D. Iowa 2009) (quoting *M.M. ex rel. L.R. v. Special Sch. Dist. No. 1*, 512 F.3d 455, 459 (8th Cir.2008)). Accordingly, Casey's Section 10(b) and Rule 10b-5 claim must be dismissed for lack of standing.[5]

Second, while conceding that Couche-Tard's Offer is "a bona fide tender offer," Casey's nevertheless contends that Couche-Tard has committed a "manipulative act" in violation of Section 10(b) and Rule 10b-5 based on its "anonymous stock <u>sale</u>" on April 9. Casey's Mem. at 24. As discussed above and previously, not only does Casey's fail to allege any particularized facts to support this claim, but the competing inference suggested by Couche-Tard's stock sales -- that Couche-Tard was acting as a rational, value-maximizing, potential acquirer -- is far more compelling than the unsupported accusation that it had a fraudulent and manipulative intent. *See*

---

[5] Moreover, and in any event, the relief Casey's seeks in this case does not even fit the "injunctive standing" exception that a minority of courts have recognized, as that exception is intended to prevent future fraudulent conduct. *See USG Corp. v. Wagner & Brown*, 689 F. Supp. 1483, 1494 (N.D. Ill. 1988), and collected cases. Here, Casey's seeks an injunction that would halt Couche-Tard's tender offer, not one to ensure against future fraud. As such, even if the Eighth Circuit had recognized this limited exception, it would not apply here.

Couche-Tard Mem. at 37-39; *Billard*, 683 F.2d at 55 (affirming dismissal of manipulation claim on grounds that plaintiffs' theory was "thoroughly implausible" and that announcing a tender offer while omitting allegedly material information was not a "manipulative device" where the offer was a bona fide, genuine tender offer that the bidder intended to consummate).[6]  For this additional, independent, reason, Casey's Section 10(b) and Rule 10b-5 claim fails to state a claim as a matter of law.

*     *     *

To state a claim for "manipulation," Casey's must allege *with particularity* facts demonstrating that, on the morning of April 9, when Couche-Tard issued its press release and later sold most of its Casey's shares, it (i) acted with the specific intention of "artificially" manipulating (depressing) Casey's stock price, as opposed to acting in its own economic self interest to maximize the gain on its sale of Casey's shares; and (ii) actually succeeded in "artificially" and permanently depressing Casey's stock price.  Casey's Complaint does neither. The facts of record (of which this Court can take judicial notice) reveal nothing more than the normal functioning of the stock market upon the announcement of Couche-Tard's intention to launch a hostile tender offer.  The stock price immediately rose, *and continued to rise throughout the day* (including both during and after Couche-Tard's sales) until it closed at $39.10 a share, obviously due to speculation that another bidder will emerge or Couche-Tard will ultimately increase its offer.  *See* Couche-Tard Mem. at 10-12.  Couche-Tard's sales represented only a small fraction of the total volume of the 15.5 million shares of Casey's common stock traded that

---

[6] While Casey's argues that ordinary trading may constitute "manipulation" if a party *intends* to manipulate the market (Casey's Mem. at 24-25), it overlooks the fact that, in each case it cites, a market participant did more than simply trade on the open market.  In addition, a successful claimant must plead *intent* with particularity and raise an inference of scienter that is both cogent and compelling, which, as explained above, Casey's has also failed to accomplish.

day (representing 30 percent of the total number of Casey's shares outstanding). *Id.* There was more liquidity in the market for Casey's shares that day (and thus less opportunity for "manipulation") than any day in its history.   The economic decision Couche-Tard made that morning, upon observing the increase in Casey's stock price to a price significantly higher than its offer (and higher than Couche-Tard was then willing to pay) was neither irrational nor manipulative, in purpose or effect.   In claiming otherwise, without particularized facts alleged, Casey's is simply grasping at straws and has failed to meet its pleading requirements.

**CONCLUSION**

For the foregoing reasons and the reasons stated in its opening memorandum, Couche-Tard's motion for judgment on the pleadings should be granted.

Dated: August 16, 2010

NYEMASTER, GOODE, WEST, HANSELL & O'BRIEN, P.C.

/s/ Jay Eaton
Jay Eaton
Thomas H. Walton (#3808)
700 Walnut Street
Suite 1600
Des Moines, Iowa 50309
(515) 283-3100
E-mail:  je@nyemaster.com
              thw@nyemaster.com

DEWEY & LEBOEUF LLP
Richard W. Reinthaler
John E. Schreiber
Matthew L. DiRisio
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

*Attorneys for Defendants-Counterclaim*
*Plaintiffs Alimentation Couche-Tard Inc.*
*and ACT Acquisition Sub, Inc.*